# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**JOSHUA J. HORKAN,**
    **Plaintiff,**

  v.              Case No. 05C1304

**SEAQUIST CLOSURES, LLC,**
    **Defendant.**

---

## DECISION AND ORDER

Plaintiff Joshua Horkan, a former employee of defendant Seaquist Closures, LLC ("Seaquist"), proceeding pro se, brings this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., alleging that defendant's termination of his employment constituted an adverse, discriminatory employment action in violation of the ADA. Defendant now moves for summary judgment.

### I. FACTS

Defendant filed the required proposed findings of fact with its motion for summary judgment. Civ. L.R. 56.2. Plaintiff did not specifically deny any of those facts and, therefore, is deemed to admit that there is no genuine issue with respect to any of the facts. Id. In an effort to view the facts in the light most favorable to plaintiff, however, I have relied only upon those facts admitted by plaintiff in his deposition and pleadings. They are as follows.

**A. Plaintiff's Employment at Seaquist**

Plaintiff began working for Seaquist in February 2003 as an inspector/operator

1

at Seaquist's Mukwonago facility. Plaintiff's duties at Seaquist included operating molding machines and periodically performing quality control checks during his shift to ensure that product that left his particular machine(s) was not defective. Plaintiff trained as an inspector/operator with the guidance of Judith Fischer, and he successfully completed the training process and passed his training evaluation.

From February 2003 to September 2003, plaintiff worked in molding room two, under the supervision of Florian Kryzkolski ("Kryzkolski"). On August 8, 2003, plaintiff left work during a shift to assist an acquaintance. During this visit, plaintiff was attacked with a baseball bat and was beaten about the head and torso. Plaintiff then took medical leave to recover from his injuries from August 8, 2003 to September 5, 2003. Upon his return to work on September 5, plaintiff requested and received a transfer to another molding room under the supervision of a different supervisor, Jess Frasier ("Frasier"). Plaintiff worked under Frasier from September 2003 to April 8, 2004, the date of plaintiff's termination from Seaquist.

**B.     Plaintiff's Medical History and Documentation**

Prior to and during his employment with Seaquist, plaintiff suffered from a learning impairment. This impairment was diagnosed as Attention Deficit Hyperactivity Disorder, or ADHD, in November 2004, seven months after his termination. Because of his learning impairment, plaintiff did not graduate from high school. He was later successful in completing a GED program and obtaining his GED.

Before his diagnosis, plaintiff was not aware of the exact nature of the ADHD, although during the course of his training he informed Judith Fischer that he had trouble concentrating, was distracted easily, and was a "hands on" learner. Ms. Fischer

adjusted her training techniques to accommodate the "hands on" style of learning, and plaintiff has acknowledged that he received adequate training by Ms. Fischer. Plaintiff did not inform anyone else at Seaquist of his learning difficulties, and he has not mentioned any other pre-existing conditions.

At the beginning of his employment, plaintiff successfully completed the required physical without any problems. During the term of his employment and as a result of the August 2003 assault, plaintiff suffered from head trauma. Plaintiff alleges that the trauma exacerbated his ADHD and also claims to have digestive system problems because of the attack. Plaintiff submitted two physicians' reports (the functional capacity evaluations, or "FCEs") to Seaquist in the wake of the assault. The first FCE, performed by Dr. Painter on August 19, 2003, indicated that plaintiff was not to lift more than 20 pounds for two weeks. The second report, performed by Dr. Fay on September 29, 2003, indicated that plaintiff was free to return to work without any restrictions at all. These were the only two instances of medical documentation submitted by plaintiff to Seaquist throughout the entire term of plaintiff's employment.

**C.    Plaintiff's Performance Issues and Evaluations**

During the course of his employment and prior to August 8, 2003, Seaquist issued two documented verbal warnings to plaintiff concerning his attendance and the length of his lunch breaks. On March 22, 2003, plaintiff's supervisor Kryzkolski issued a documented verbal warning, noting that plaintiff was at risk for disciplinary action related to Seaquist's attendance policy. On April 14, 2003, Kryzkolski issued a documented verbal warning to plaintiff because plaintiff took a lunch break in excess of the regular time limit. Notwithstanding these two warnings, plaintiff's performance

3

evaluations, issued on April 28 and September 5, 2003, were generally positive. The evaluations, however, did contain observations related to plaintiff's inconsistent performance of the required quality control checks.

Subsequent to the attack, Seaquist issued several more warnings, both oral and written, regarding problems with plaintiff's performance at work. On September 5, 2003, Kryzkolski issued plaintiff a documented verbal warning for his unapproved absence from the work premises during his break on August 8, 2003. Then, on February 20, 2004, plaintiff's supervisor, Jess Frasier, issued plaintiff another documented verbal warning because plaintiff failed to perform a quality control check in a timely manner, resulting in defective product that had to be scrapped and reprocessed.

On March 6, 2004, Frasier issued plaintiff a written warning because of another failure to perform quality control checks. After the warning was issued, plaintiff again left work in the middle of his shift without giving notice to a supervisor, two hours prior to the scheduled end of his shift. Plaintiff notes, however, that he had to leave work to address an emergency situation arising from the medical problems he had with his digestive system and that he phoned Seaquist as soon as possible after leaving work to inform them of his absence and the reason for it. Subsequently, plaintiff also missed work on March 7 and March 11, 2004. Plaintiff admits that these two absences were a result of plaintiff's personal and legal troubles, rather than due to a medical condition. Plaintiff received another written warning on March 10 for his absence from work as well as a continuing failure to perform the quality control checks. On April 2 and 4, 2004, plaintiff again failed to perform the necessary quality control checks. After these latter two incidents, Frasier recommended plaintiff's termination for failure to comply with

4

company policy and requirements, and Seaquist thus terminated plaintiff's employment on April 8, 2004.

**D.     Subsequent Events**

Subsequent to plaintiff's termination, he filed a grievance in June 2004 with the Wisconsin Equal Rights Division (the "ERD"), which denied his claim, citing a lack of probable cause that Seaquist discriminated against plaintiff. The EEOC adopted the findings of the ERD in September 2005, also denying plaintiff's request for relief. Plaintiff then brought this action in December 2005, claiming wrongful termination in violation of the ADA.

## II. APPLICABLE LAW

**A.     Summary Judgment Standard**

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the initial burden of demonstrating that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may satisfy its initial burden simply by pointing out that there is an absence

5

of evidence supporting the non-moving party's case. Id. at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. Id. at 322-23. Neither party may rest on mere allegations or denials in the pleadings, Anderson, 477 U.S. at 248.

In evaluating a motion for summary judgment, I must draw all inferences in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, I am "not required to draw every conceivable inference from the record-only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir.1991). I do note, however, that "[m]otions for summary judgment in employment discrimination cases must be approached 'with added rigor,' because credibility and intent are often central issues. '[A]ffidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" Collier v. Budd Co., 66 F.3d 886, 892 (7th Cir. 1995) (citation omitted) (quoting Courtney v. Biosound, 42 F.3d 414, 418 (7th Cir. 1994)).

**B.    Relevant ADA Law**

The ADA prohibits an employer from discriminating against "a qualified individual with a disability" in connection with employment. 42 U.S.C. § 12112(a).[1]  "Disability" means: "(A) a physical or mental impairment that substantially limits one or more of the

---

[1] There are two types of disability discrimination claims under the ADA: disparate treatment claims and failure to accommodate claims. Wright v. Ill. Dep't of Corrections, 204 F.3d 727, 730-32 (7th Cir. 2000). In the present case, plaintiff claims disparate treatment.

major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). "Substantially limited" means considerably limited or limited to a large degree as compared to an average person. 29 C.F.R. § 1630.2(j)(ii); Toyota Motor Mfg. Ky., Inc. v. Williams, 534 U.S. 184, 196-99 (2002); see also Dvorak v. Mostardi Platt Assocs., Inc., 289 F.3d 479, 484 (7th Cir. 2002).

**C.     Proving Discrimination**

Plaintiff can prove disability discrimination directly or via the indirect, burden-shifting method established in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). Because plaintiff has no direct evidence of discrimination by Seaquist, his case must proceed via the McDonnell-Douglas analysis.

To make a prima facie case of disability discrimination at the summary judgment phase, plaintiff must offer evidence that 1) he is disabled within the meaning of the ADA, 2) he was meeting Seaquist's legitimate employment expectations, 3) he was subject to an adverse employment action, and 4) similarly situated employees received more favorable treatment. Rooney v. Koch Air, LLC, 410 F.3d 376, 380-81 (7th Cir. 2005). If plaintiff makes this showing, the burden of production shifts to defendant to articulate a non-discriminatory reason for the discharge. Dvorak v. Mostardi Platt Assocs., Inc., 289 F.3d 479, 485 (7th Cir. 2002). If defendant articulates such a reason, plaintiff must prove by a preponderance of the evidence that defendant's proffered reason was a pretext for intentional discrimination. Id.

## III.  DISCUSSION

After carefully scrutinizing all pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits filed in this case, I conclude that plaintiff's case fails the McDonnell-Douglas analysis.  First, plaintiff has failed to set forth any evidence establishing a prima facie case of discrimination under the ADA.  Most notably, plaintiff has not demonstrated that he is disabled as defined by the ADA, that he was meeting Seaquist's legitimate employment expectations, or that similarly situated employees were treated more favorably.  Second, even if I were to assume that Plaintiff is disabled within the definition of the ADA, he has failed to introduce any evidence contradicting the non-discriminatory reason Seaquist gave for plaintiff's termination. Defendants, therefore, are entitled to judgment as a matter of law.

**A.     Prima Facie Case Under McDonnell-Douglas**

**1.     "Disabled" Within the ADA**

Plaintiff has failed to adduce any evidence, outside of conclusory statements in the pleadings, that he is disabled as defined by the ADA.  Specifically, he has not introduced evidence a) that his ADHD or digestive problems substantially limit one or more life activities, b) that there was a record of disability at the time of his termination, or c) that Seaquist regarded him as disabled.  42 U.S.C. § 12102(2).

**a.     Substantially Limited in One or More Major Life Activities**

Plaintiff has indicated at most that his ADHD impaired his ability to learn and to work, but he has not provided any evidence that these activities, or any other major life activities, were substantially limited.  As to the learning impairment, the fact that plaintiff

8

completed his training successfully and was given approval to work as inspector/operator suggests that he was fully capable of learning and in fact adequately learned his job. With respect to limitations in working, to demonstrate a substantial limitation, plaintiff must show that he was "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." Best v. Shell Oil Co., 107 F.3d 544, 548 (7th Cir.1997). Here, plaintiff stated expressly that–as late as February 2004, just two months prior to his termination–he did not feel that his mental problems were holding him back at all at work. When Seaquist disciplined plaintiff for failure to conform to regulations, and even at the time of his termination, plaintiff never mentioned his alleged disability as a reason for his performance failures. Additionally, when discussing the specific instances of discipline in his deposition, plaintiff explained his failures in terms of shortages of manpower and similar reasons rather than the alleged disability. Moreover, plaintiff did not believe that his mental problems were serious enough to consult with a specialist until November 2004, seven months after his termination from Seaquist. In short, plaintiff has failed to offer evidence that his ADHD substantially limited his job performance at Seaquist, not to mention his ability to perform a class of jobs or a broad range of jobs in various classes.

Regarding plaintiff's digestive issues, he has specified only one day–March 6, 2004–out of his 14 month employment where his digestive problems interfered with his work. This one day of enteric distress does not rise to the level of a substantial limitation on working or any other major life activity, and therefore does not constitute a disability under the ADA.

9

### b. Record of Disability

Likewise, plaintiff has not demonstrated that there was a record of his impairment at the time of his termination. While evidence of a history of a substantially limiting impairment could constitute a disability under the ADA, it is necessary to show that the employer was aware of this history. See Davidson v. Midelfort Clinic, Ltd, 133 F.3d 499, 509-10 (7th Cir. 1998). Apart from plaintiff's disclosure to Judith Fischer that he had learning difficulties, was easily distracted, and was a hands-on learner, plaintiff did not inform Seaquist of his history and has not demonstrated that Seaquist was aware of it. Plaintiff was not diagnosed with ADHD until after his termination. Nor did plaintiff submit any medical documentation indicating in any way the condition he claims as a disability. The only medical documents submitted to Seaquist were the records of the two FCEs performed after the August 2003 assault on plaintiff, and these records merely indicated a temporary lifting restriction that was later lifted completely. There were no other records of restrictions. Also, plaintiff completed and passed his initial physical performed at the beginning of his employment with Seaquist. Additionally, because plaintiff's ADHD does not rise to the level of disability, as discussed above, even his history of learning impairment would not qualify him as disabled within the meaning of the ADA.

### c. "Regarded As" Disabled

Finally, plaintiff has not shown that Seaquist regarded him as being substantially limited in one of the major life activities. The only evidence indicating Seaquist even knew about plaintiff's condition was plaintiff's claim that he told Judith Fischer about his

learning difficulties, about the fact that he was easily distracted, and about his being a hands-on learner. It is not enough, however, for plaintiff to show merely that Ms. Fischer or Seaquist knew of this learning difficulty; plaintiff must demonstrate additionally that they believed that this impairment substantially limited one of plaintiff's major life activities, such as learning or working. Amadio v. Ford Motor Co., 238 F.3d 919, 925 (7th Cir. 2001). Here, plaintiff's assertion at most demonstrates that Judith Fischer regarded plaintiff as having a learning difficulty. Furthermore, plaintiff's successful completion of his training belies the possibility of a belief on the part of Ms. Fischer that plaintiff's abilities to work or learn were substantially limited. On the contrary, it suggests that Ms. Fischer believed plaintiff was competent enough in the performance of his job to warrant a successful training evaluation. Similarly, plaintiff's performance evaluations from his supervisors suggest that Seaquist management regarded plaintiff as being quite capable of performing his job; as plaintiff points out, they referred to him as a "diamond in the rough"–an individual who, with some practice, could be very good at his job.

### 2. Meeting Legitimate Expectations

Likewise, plaintiff has not demonstrated by evidence that he was meeting Seaquist's legitimate employment expectations. He alleges that he liked his job, was enthusiastic about his job, and felt that he adequately performed his job. Nonetheless, plaintiff consistently failed to comply with Seaquist standards, especially with respect to the required periodic quality control checks that were essential in preventing defective product from leaving the line. From the first performance evaluation, which was conducted prior to the assault on plaintiff that exacerbated his ADHD, Seaquist

supervisors noted plaintiff's inconsistency in performing the control checks which led to defective product and waste of time, resources, and money.  This problem did not abate over time, but was ever-present throughout the course of plaintiff's employment and indeed was the final event leading to plaintiff's termination.  Plaintiff has not provided evidence that he was capable of resolving this issue, regardless of whether Seaquist provided any manner of accommodation, and there is no indication that he would be able to better perform in the future and to comply with these fundamental requirements for his job.

### 3.     More Favorable Treatment to Similarly Situated Employees

Plaintiff has not adduced a single piece of evidence, outside of general statements that other employees did not receive write-ups for similar behavior, that suggests that Seaquist treated other similarly situated employees without an impairment better than it treated plaintiff.  See Kampmier v. Emeritus Corp., 472 F.3d 930, 938 (7th Cir. 2007) ("[Plaintiff] is required to identify a similarly situated individual who received more favorable treatment.").  Plaintiff has not identified a single employee or a single specific instance where he was treated differently from other employees.  As stated above, at the summary judgment stage, a party cannot rely merely on conclusory statements in the pleadings, but must identify specific facts.  Plaintiff has not done so, and therefore has not met this requirement for the prima facie case of discrimination.

### B.     Evidence of Pretext

Even assuming that plaintiff has offered evidence establishing a prima facie case of employment discrimination in violation of the ADA, he has not offered any evidence

12

Case 2:05-cv-01304-LA   Filed 09/07/07   Page 12 of 14   Document 42

at all tending to discredit Seaquist's non-discriminatory reason for plaintiff's termination–that he consistently failed to comply with Seaquist regulations, especially with regard to the required periodic quality control checks. Plaintiff, in his deposition, does not dispute the motivation underlying Seaquist's various disciplinary actions. Rather he disputes whether Seaquist was being too demanding and unrealistic in it's standards. For example, regarding the documented verbal warning for plaintiff's long lunch break, plaintiff stated that there was an understanding between teams, that one team would take an extra few minutes at lunch while the other team covered, and vice versa. And with regard to the warnings for failure to perform quality control checks in a timely manner, plaintiff argues that while he may have performed the tests late, he did them as soon as he could given the fact that they were short-handed on those shifts, that he was covering multiple molding machines, and that he often had to share testing equipment with other inspector/operators.

Although plaintiff's arguments against the correctness of the disciplinary actions might be valid, this type of evidence is not relevant to undercutting the sincerity of a proffered non-discriminatory reason for an adverse employment action. As the Seventh Circuit has often noted, "it does not matter whether the employer was ultimately wrong or unfair in the determination, nor whether a jury in the company's shoes would have fired him. Rather, [plaintiff] would need to show that not even the employer believed the reasons it proffered for firing him." Dvorak, 289 F.3d at 487.

Here, plaintiff has not demonstrated to even a small degree that Seaquist undertook any of the disciplinary actions for reasons, motivations, or purposes other than those stated on the documented warnings. Thus, plaintiff has failed to offer any

13

evidence by which a trier of fact could reasonably find that Seaquist's stated reasons for plaintiff's termination were pretextual.

## IV.  CONCLUSION

Therefore, for the reasons stated,

**IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED** and this case is **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 6 day of September, 2007

/s_____
LYNN ADELMAN
District Judge